UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| Denise F., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 17 CV 50320 |
| | ) | Magistrate Judge Lisa A. Jensen |
| Andrew Marshal Saul, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| *Defendant*. | ) | |

## <u>MEMORANDUM OPINON AND ORDER</u>

This is a Social Security disability appeal filed by Plaintiff who is now proceeding *pro se*.

Plaintiff has been receiving supplemental security income benefits, under Title XVI, since

sometime after she was found to be disabled as of March 21, 2014.[1] R.16. But this case is not

about those benefits. Instead, it concerns a separate Title II application. At issue is whether

Plaintiff was disabled for the roughly three-and-a-half-year period from February 28, 2008 (her

alleged onset date) through September 30, 2011 (her date last insured). Plaintiff alleges that she

was disabled based on osteogenesis imperfecta (brittle bones), back and other bodily pains, and

depression, among other problems.

An administrative hearing was held in 2016. Plaintiff testified, along with a vocational

expert. Plaintiff was represented at the hearing by counsel who gave an opening statement, asked

questions of both witnesses, and answered various questions posed by the ALJ.

Thereafter, the ALJ issued a written ruling finding that Plaintiff had the following

medically determinable impairments: "uterine fibroids; history of bilateral lower extremity

---

[1] The exact date these benefits began being paid is not clear from the briefs, but this fact is not relevant
for this appeal.

fractures; depression; and anxiety." R. 18. However, the ALJ concluded that these impairments were not severe enough to significantly limit Plaintiff's ability to perform work activities. The ALJ found that Plaintiff had minimal treatment and also did not consistently follow treatment recommendations during the relevant period. The ALJ also relied on the fact that Plaintiff was doing a wide variety of activities.[2]

## DISCUSSION

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971); *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) ("whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high"). Accordingly, a reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). A reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build

---

[2] As part of the analysis, the ALJ gave little weight to two statements submitted by Katherine Schenck, a physician's assistant, who served as Plaintiff's primary treater. R. 22. Plaintiff has not challenged this part of the decision, and thus any arguments relating to it are waived.

an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).

An additional consideration in this case arises from the fact that Plaintiff is proceeding *pro se* in this Court. It should be noted first that she was represented all throughout the administrative proceedings by counsel who is highly experienced in handling Social Security cases. As result, this Court must assume that counsel presented the "best case" to the ALJ. *Skinner v. Astrue,* 478 F.3d 836, 842 (7th Cir. 2007) ("a claimant represented by counsel is presumed to have made his best case before the ALJ"). However, Plaintiff is now proceeding *pro se* here. As required by Seventh Circuit precedent, this Court must "liberally construe" claims brought by *pro se* litigants; at the same time, the Seventh Circuit has made clear that *pro se* litigants are still required to "present arguments supported by citations to the record and legal authority." *Jackson v. Astrue*, 472 Fed. App'x. 421, 422 (7th Cir. 2012); *Anderson v. Hardman*, 241 F.3d 544, 545-46 (7th Cir. 2001); *Greenwell v. Saul*, 811 Fed. App'x. 368, 370 (7th Cir. 2020) ("We construe pro se filings liberally, but a litigant still must comply with Federal Rule of Appellate Procedure 28(a)(8), which requires that a brief present a cogent legal argument with citations to authority and relevant parts of the record."). Relying on these principles, the Seventh Circuit has affirmed ALJ decisions in many instances even though the claimant was proceeding *pro se*.[3]

With these principles in mind, we turn to the briefs. Plaintiff filed an 18-page, single-line-spaced opening brief. Dkt. 12. Despite being handwritten, it is legible and neatly presented. As evidenced by handwritten editorial changes in the margins and interlinings, it is clear that

---

[3] *See, e.g.*, *Cadenhead v. Astrue*, 410 Fed. App'x. 982, 984 (7th Cir. 2011) (dismissing appeal: a "generalized assertion of error is not sufficient" and "undeveloped or unsupported contentions are waived"); *McLachlan v. Astrue*, 392 Fed. App'x. 493, 494 (7th Cir. 2010) (two-paragraph order dismissing *pro se* appeal because the claimant's brief presented only a "generalized assertion of error").

Plaintiff took care to proofread the document. The Court has no difficulty following Plaintiff's train of thought. As far as content, the brief largely consists of a chronological summary of Plaintiff's major life events—at least those bearing on her current problems. The summary covers a wide timespan, going back to her birth and early childhood. Plaintiff describes difficult matters, including childhood abuse, the death of her twin brother in 1985, a car accident, and strained relationships with both parents. *See* Dkt. 12 at 14 ("I didn't talk to [my father] for 10 years"); *id.* at 15 ("I never got along with my mother"); *id.* at 17 ("My mother really messed me up during my life"). Although the brief is predominantly a factual narrative, it does raise some intermittent criticisms of the ALJ's decision.

The Commissioner filed a very short response brief—just over two pages. It has one argument basically, which is that all of Plaintiff's possible arguments are waived because she failed to support or develop them. Relying on the Seventh Circuit case law discussed above, the Commissioner argues that Plaintiff's brief "contains no more than a series of factual allegations without citation to the record and with no argument or legal support." Dkt. 16 at 2 (calling her arguments "threadbare").[4] The Commissioner argues that Plaintiff's long opening brief ultimately boils down to a request for this Court to reweigh the same evidence the ALJ considered and to then "substitute [its] own judgment" in place of the ALJ's judgment, which this Court is not allowed to do. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

Plaintiff filed a reply brief, although not formally labelled as such, in which she reiterated the same points raised in the opening brief. Dkt. 17 at 5 (arguing: "Again, I feel the ALJ made

---

[4] The Commissioner does not attempt to rebut any of Plaintiff's specific arguments with one exception. In a footnote, the Commissioner argues that two documents that were attached to Plaintiff's opening brief should not be considered because the first document is not in the record and the second was specifically considered by the ALJ. Dkt. 16 at 3 n.1. The Court agrees with these arguments, and further notes that Plaintiff, in her two briefs, did not make any attempt to explain how these documents supported her arguments.

the wrong decision."). Because the Court does not find that this reply brief adds any materially new information, the Court will not further discuss it but will instead rely on the opening brief as the best statement of Plaintiff's case.

After reviewing the briefs, as well as relevant portions of the record, the Court agrees with the Commissioner's core contention that Plaintiff's arguments are skeletal and not supported by citations or legal authorities. However, the Court does not agree that they should be summarily dismissed. They deserve some acknowledgement and consideration. In reviewing Plaintiff's opening brief, the Court discerns three basic arguments. Plaintiff did not formally divide her arguments into these particular categories, but the Court finds that this categorization provides a convenient template for the discussion here.

**Argument #1.** The broadest argument is that the ALJ was unfair in how she questioned Plaintiff at the hearing. At several points in her brief, Plaintiff asserts that the ALJ required yes-or-no answers and did not give Plaintiff a chance to further explain her answers. This style of questioning made Plaintiff feel nervous and intimidated. *See* Dkt. 12 at 9-10 ("When I was talking to the ALJ Judge I was very very nervous and she said keep your answers to yes and no. She never gave me a chance to explain my self."); *id.* at 13 ("As I said before the ALJ Judge just wanted yes or no answers. I couldn't explain anything. She was very intimidating, my whole body was shaking sitting in front of the tv screen."). In making this argument, Plaintiff did not cite to any pages in the transcript, nor did she descriptively identify a particular exchange. Her argument thus seems to be more of a generalized claim that the ALJ was overbearing throughout the hearing.

The Court has reviewed the transcript and does not find support for this contention. The ALJ's questions were in the normal range of questions this Court has seen in reviewing these

cases. The ALJ asked a number of open-ended questions. *See, e.g.*, R. 39 ("And why did you stop doing that job"). And it appears that in most cases Plaintiff was able to answer how she wanted. *See id.* (providing a long answer to the "stop doing that job" question). It is true that, in some instances, the ALJ asked targeted questions when she was trying to figure out a discrete issue. *See, e.g.*, R. 35. And in a few instances, the ALJ did interrupt Plaintiff to get her to focus her answer in a particular way. For example, on the issue of Plaintiff's cane use, the ALJ cut off Plaintiff as she was starting to give her answer, but the ALJ did so to get Plaintiff to focus on the relevant 2008-11 period, rather letting her go on to describe her current cane use, which would not have been relevant. R. 50. Such interruptions—assuming they are not constant and overly impolite—are not unreasonable because ALJs must efficiently manage their time. Moreover, to the extent that the ALJ did somehow prevent Plaintiff from giving a full answer, Plaintiff's counsel was allowed to separately question Plaintiff to bring out issues or facts that counsel, in her professional experience, deemed important in the presentation of Plaintiff's best case.

**Argument #2.** Plaintiff raises a series of criticisms about the way the ALJ described her activities and chores. This topic, generally referred to as "activities of daily living," is explored in almost every Social Security disability case. The parties in this Court often argue over whether the ALJ mischaracterized or gave undue weight to these activities. *See generally Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (the claimant's daily activities cannot be relied on by themselves to determine a claimant's ability to perform full time work, but they may be used to compare inconsistencies between the claimant's daily activities and the claimant's testimony to determine credibility). Here, the Court does not find that the ALJ struck an improper balance between these competing concerns.

The ALJ concluded that Plaintiff was able to perform a "wide range" of activities and that this ability undermined her allegations about her supposedly limited abilities. R. 22. Specifically the ALJ stated that Plaintiff had admitted that she was able to "perform her own activities of personal care, drive a car, prepare meals, go shopping, raise a litter of kittens, act as caretaker and financial manager for her invalid mother, attend school, and work in a garden and watch television for recreation." *Id.* Later in the decision, the ALJ also mentioned a few other activities, including the fact that she was in a romantic relationship at one point, showing that she had some capacity for social interaction. R. 23.

Plaintiff argues that the ALJ overstated her activities or omitted contextual facts. Set forth below are some of the specific criticisms:

- although she did prepare meals, she usually just heated up frozen dinners in the microwave
- although she did go grocery shopping, it was not frequent and she just went "in and out" and her friend usually drove
- she did have a relationship with a man during the relevant period, but it was a dysfunctional relationship centered around drug use, and Plaintiff terminated it after several months
- she took a pharmaceutical class, but found it to be "way too hard!"

Dkt. 12 at 9-14. This list is not exhaustive, but it illustrates the nature of these criticisms.

After reviewing these contentions, the Court does not find that they justify a remand. The ALJ acknowledged many of these facts. The ALJ noted, for example, that Plaintiff typically prepared only "simple meals" and that she "needed assistance with grocery shopping during the winter" and that her friend, William Nelson, helped out with yard work. *See* R. 19, 20. The ALJ also noted that Plaintiff's romantic relationship "was apparently short-lived." R. 23.

In other instances, Plaintiff's contentions are not fully supported by the underlying source materials. For example, Plaintiff states that "the ALJ said I was happy about getting some flower [] in the mail but she never gave me a chance to say someone was going to plant them for me."

Dkt. 12 at 9. At issue is the ALJ's statement that Plaintiff told a nurse at one visit that she had been "doing better [] in the last 6 months" and was "excited about the flowers she ordered and having time outside soon." R. 21. This fact was cited as evidence bearing on Plaintiff's mood at the time. Plaintiff seems to construe the ALJ's statement as a claim that Plaintiff was doing the physical labor of planting the flowers. As a preliminary point, the ALJ did not explicitly state that Plaintiff did the planting herself, as opposed to having someone else do the work, but merely stated that she was outside, which is one activity her treatment providers recommended for her depression. But even if the ALJ's statement could be construed as an implicit assertion in the way Plaintiff suggests, such an assertion finds some support in the record. Specifically, at the hearing, Plaintiff testified that, although she was not gardening in 2008-11 like she used to do before then, she still occasionally planted flowers. *See* R. 52 ("Q [by the ALJ] But you were doing some gardening. A [by plaintiff] To put in a little flower here and there, I would. But not to the extent that I used to garden.").

To consider another example, Plaintiff complains that the ALJ misconstrued Plaintiff's role in helping her elderly mother. The ALJ stated that Plaintiff "act[ed] as caretaker and financial manager for her invalid mother." R. 22. Plaintiff argues in response: "The ALJ also said I manage the finances of my invalid mother, which is wrong. I had to keep track of the visiting nurses and home care workers which were many! There was no body to do it except me!" Dkt. 12 at 13-14. Plaintiff disputes the part about her managing finances, but not the part about her managing the medical care. To the extent that the ALJ got the finance part wrong, any error would be harmless because the larger point still holds, which is that Plaintiff was capable of handling a complex task. Plaintiff does not deny this point. In fact, she touts it, as demonstrated by the back-to-back exclamation points.

Plaintiff's remaining criticisms are of a similar nature. The Court finds that all these criticisms, even when construed liberally and collectively, are at best minor differences of characterization. *See Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010) ("Rather than nitpick the ALJ's opinion for inconsistences or contradictions, we give it a commonsensical reading.").

**Argument #3.** Plaintiff states in several places that the reason she only had minimal treatment, including no counseling for depression, is because she did not have insurance and could not afford it. *See* Dkt. 12 at 11 ("I would stop taking [depression medications] [because] I never had money to go see a [psychiatrist] and I truly believe I don't know if they could help me."); *id.* at 16 ("[Doctors] have wanted me to go talk to someone but I didn't have the money."). Although Plaintiff did not cite to any case law to support this argument, the Seventh Circuit has repeatedly held that an ALJ cannot "rely on an uninsured claimant's sparse treatment history to show that a condition was not serious without exploring why the treatment history was thin." *Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014). But the Court does not find this argument, which is the strongest of the three, is sufficient for a remand because the ALJ did explore and address this issue. At the hearing, the ALJ explored this issue in some depth, asking Plaintiff a series of questions about it. *See* R. 43-45. In the later written decision, the ALJ also specifically addressed this issue, stating for example the following about Plaintiff's failure to follow repeated recommendations from her treatment providers to get counseling for her depression: "The claimant testified with regard to counseling that she did not believe she would be able to afford individual counseling, however, this does not explain why she did not even attempt to contact the counselors recommended by her treating provider." R. 22. The Court is not aware of any authority suggesting that the ALJ was required to do more investigation than she did. For these reasons, the Court does not find that this argument, standing alone, is persuasive.

9

One larger point should at least be acknowledged in closing. If this case were remanded, Plaintiff would face an additional significant barrier in light of the admission she has made in her opening brief. As she states in somewhat dramatic terms, she has never told anyone—not the ALJ, not her doctors, and presumably not even her attorney—the "real story" about her condition. *See* Dkt. 12 at 11 ("I've never told my real story to any one before, but this is the 'real story.'"). She has chosen to come forward now and tell the "truth" to this Court. *Id.* at 18 ("I have told you the truth in my [brief].").

Plaintiff reveals that she was addicted to alcohol and drugs (specifically cocaine) "starting in 1985" and continuing at least through 2011 when she stopped using cocaine. Dkt. 12 at 10, 11. In other words, she was using these addictive substances throughout most, if not all, of the relevant period. She explains: "I have never [told] anyone about this before, not Katey Shenk, not the ALJ Judge because I was <u>ashamed</u>! I thought of [suicide] a lot [throughout] the years. I never attempted it. I'm sorry I lied to everyone. But that's how I am. I keep it all to my self." *Id.* at 10 (emphasis in original).

This new admission would undoubtedly complicate Plaintiff's case in many ways if this case were remanded. For one thing, she would have to overcome significant questions about her credibility and why she "lied to everyone," as she puts it. This new information also would complicate the analysis regarding whether Plaintiff's treatment and medications were inconsistent or conservative. Finally, by statute, a claimant cannot be found disabled "if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). An ALJ would have to determine whether the claimant would still be found disabled "if he or she stopped using drugs or alcohol." SSR 13-2p; *see also Kangail v. Barnhart*, 454 F.3d 627, 628 (7th Cir. 2006) ("When an

10

applicant for disability benefits both has a potentially disabling illness and is a substance abuser, the issue for the administrative law judge is whether, were the applicant not a substance abuser, she would still be disabled").

In sum, the Court acknowledges and sympathizes with the fact that Plaintiff has dealt with challenging and unfortunate circumstances throughout her life, beginning when she was young and continuing into adulthood with the death of her twin brother, among many other things. However, this Court must act within the confines of the existing Social Security disability standards of review, an important one being the principle that this Court may not simply reconsider the facts or reweigh evidence to reach a different result from the one reached by the ALJ. *See Elder*, 529 F.3d at 413.

## CONCLUSION

For these reasons, it is this Court's report and recommendation that Plaintiff's motion for summary judgment be denied, the Commissioner's motion be granted, and the Commissioner's decision be affirmed. Any objections to this report and recommendation must be filed by November 4, 2020. *See* Fed. R. Civ. P. 72(b). The failure to file a timely objection may result in the waiver of objections on appeal. *See Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-61 (7th Cir. 1989).

Date: October 21, 2020                    By: _____
                                              Lisa A. Jensen
                                              United States Magistrate Judge

11